UNITED FURNITURE WORKERS OF AMERICA, AFL-CIO, LOCAL NO. 395, Plaintiff,

v.

VIRCO MFG. CORPORATION, Defendant.

No. LR-61-C-96.

United States District Court
E. D. Arkansas, W. D.

March 9, 1962.

James E. Youngdahl, of McMath, Leatherman, Woods & Youngdahl, Little Rock, Ark., for plaintiff.

J. W. Barron, of Rose, Meek, House, Barron, Nash & Williamson, Little Rock, Ark., for defendant.

## MEMORANDUM AND JUDGMENT

HENLEY, Chief Judge.

This is a suit for specific performance of an award made by an arbitrator selected to arbitrate certain grievances arising during the term of a collective bargaining agreement which was at all times here pertinent in force between plaintiff, United Furniture Workers of America, AFL–CIO, Local No. 395, hereinafter called the Union, and Virco Manufacturing Corporation, hereinafter called Virco or the Company. Jurisdiction is predicated upon section 301 of the Labor-Management Relations Act of 1947, 29 U.S.C.A. § 185. The cause has been submitted upon a stipulation of facts, certain exhibits, and written briefs. The principal facts in the case are as follows:

The Union is the collective bargaining agent for the employees of Virco, a corporation engaged in the manufacture of school furniture which is sold in interstate commerce.

In February 1960 the Union and Virco entered into a collective bargaining agreement for a period of one year, which agreement governed wages, hours, and working conditions of Virco's employees. The agreement set up a procedure for the processing of grievances and provided for compulsory arbitration of grievances which could not be settled by negotiation. Insofar as here relevant, the arbitration provision is as follows:

"* * * The arbitration shall be by an impartial arbitrator mutually agreed upon. The impartial arbitrator shall hear the matter in dispute and submit his decision in writing within thirty (30) days after the controversy has been submitted to him. The decision of the impartial arbitrator shall be retroactive, and take effect as of the date upon which the controversy originally occurred. His decision shall be binding on the Union, the aggrieved party or parties and the Employer.

The impartial arbitrator shall at all times be governed by the terms of this agreement. The sole function of the arbitrator shall be to determine whether the Employer or the Union is correct with reference to the proper application and interpetation of this agreement, and no arbitrator shall have any authority to change, amend, modify, supplement or otherwise alter in any respect whatsoever this agreement or any part hereof. He shall have no power to substitute his discretion for the Company's discretion in cases where under this agreement discretion is reserved to the Company."

The contract provided that Virco should have at all times, subject to the express provisions of the agreement, full control of matters relative to management and the conduct of its business; that it should have control of the plant and its operations, the direction of its working forces, methods of production, wages and production standards, general management of its plants and buildings, care and use of machinery and material, and the right to hire, discharge, promote, and transfer employees. Any and all of the rights, powers, and authority that the Company had prior to the signing of the agreement were retained except those "specifically abridged, delegated, granted or modified by (the) agreement or any supplementary agreement that may hereafter be made."

The parties agreed further that there would be no discrimination against any Union employees because they were members of the Union or against any nonunion employees because they were not members of the Union.

It was provided that employees might be discharged for "just cause," and that "violation of a Company rule or rules (should) be deemed to be just cause but just cause shall not be limited to violation of Company rules."

The record discloses that Virco in fact prescribed a number of rules for the conduct of employees. Some of those rules were incorporated in a pamphlet distrib-

uted to employees upon hiring entitled "Working With Virco," and other rules were contained in a bulletin which was posted in conspicuous places on the Virco premises. Among other things, those rules prohibited the use by employees toward other employees of any insulting language and prohibited loitering in the rest room.

On August 31, 1960, two employees, Rigdon and Moix, while loitering in the rest room were discovered by supervisory personnel of Virco. Some words passed between the individuals concerned, and later in the day both men were discharged.

The Union invoked the grievance procedure prescribed by the contract, and the Company having consistently refused to accept the grievances and restore the men to their employment, arbitration was invoked, and the matter was heard before Professor Robert A. Leflar of the University of Arkansas Law School.

Following the hearing, Dr. Leflar prepared a written opinion and made an award denying reinstatement as to Moix, but directing that Rigdon be reinstated and paid retroactively to January 1, 1961, at the rate of his average earnings for a forty-four hour week during the three months immediately prior to his discharge. The Company has refused to carry out the award of the arbitrator, and this suit has been brought to compel it to do so.[1]

In resisting the claim of the Union Virco does not question the jurisdiction of the Court under the Labor-Management Relations Act, nor does it deny in the abstract that an arbitrator in a case of this kind has the power to order the reinstatement with back pay of a wrongfully discharged worker, or that the award of an arbitrator can be specifically enforced by judicial action. The position of Virco is that the arbitrator in reaching his decision and making his award in this case exceeded his powers in that he, in effect, amended the contract and invaded the reserved field of managerial discretion.

The function of the Court in this case is a limited one, and does not include a consideration of the merits of the grievance in question or of the interpretation which the arbitrator put upon the contract. If the arbitrator acted within the scope of his authority, that is to say if he confined himself to determining the proper interpretation and application of the contract as related to the conduct of the employee Rigdon, his award is final, and must be enforced by the Court. On the other hand, if the arbitrator undertook to amend the contract or to substitute his own discretion for that of management in a field reserved to the latter or if he otherwise undertook to dispense "his own brand of industrial justice," enforcement of the award must be denied. United Steelworkers of America v. Enterprise Wheel & Car Corporation, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed. 2d 1424; United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; Lodge No. 12, District No. 37, Int. Ass'n. of Machinists, 5 Cir., 292 F.2d 112; International Telephone & Telegraph Corporation v. Local 400, Professional, Technical & Salaried Division, Int. Union of E. R. & M. Workers, 3 Cir., 286 F.2d 329.

Coming now to the merits, the record discloses that the employee Rigdon was discharged for violation of two of the Company's rules, namely, the rule which prohibited the use of abusive or insulting language toward a fellow employee, and a rule which prohibited loitering in the rest room. Those violations were set forth in a written warning notice given Rigdon on the same day on which he was discharged, and said notice was the third written notice of a rule violation which Rigdon had received.

In the proceedings before the arbitrator the Union took the position that Rig-

---

1. This action does not involve the employee Moix.

don was actually discharged on account of his union activities and not on account of his violation of the rules, and, further, that his alleged violations did not constitute "just cause" for his dismissal. The Company contended, on the other hand, that Rigdon was dismissed on account of the rule violations which have been mentioned, and that under the contract his violations constituted valid grounds for his discharge.

In his opinion the arbitrator found first that the claim of the Union that Rigdon had been dismissed on account of union activity had not been sustained. The Company, of course, makes no complaint as to that finding.

As to the language used by Rigdon to his superiors during the conversation in the rest room the arbitrator wrote:

"The immediate occasion of the discharges occurred on the early morning of Aug. 31, 1960, when J. S. Mattingly, general manager of the Virco plant * * * and Henry (Tex) Thurman, plant superintendent, discovered the two grievants and two other Virco employees in a toilet during work hours. They were not using the facilities of the toilet, but were just sitting there, fully clothed, perhaps in conversation. They testified that they had already used the facilities. The evidence as to how long the grievants had been there varied, but it was somewhere between four and fifteen minutes. Mattingly and Thurman at once told all four men that they would receive written warning notices for violation of a posted Company rule that 'employees shall not loiter or spend unnecessary time in dressing rooms or toilets.' Additional conversations between the grievants and certain supervisory personnel concerning the length of time spent in the toilet took place a few minutes later, and *some angry language was employed in these conversations*. The written warning notices were then prepared and handed to the four men. The

grievants' notices were stated to be for violation of two Company rules: (1) loitering in the toilet and (2) lack of courtesy or use of insulting language to fellow employees. *The second violation stated was a reference to the language used in the conversations just referred to and may be disregarded. It was of no real importance. The cases turn on the loitering violation * * *."* (Emphasis supplied.)

■ As the Court construes the arbitrator's opinion, he found that the language in question did not in fact violate the Company rule against the use of insulting language, and did not constitute a valid reason for discharge. The question of whether the language employed constituted a proper basis for discharge was clearly an arbitrable issue, and the arbitrator's decision is final. Whether the Court would have come to the same conclusion is not material.[2]

In approaching the loitering violation the arbitrator was careful to delineate his own function. He said:

"The arbitrator is especially concerned with the importance of complying with that part of the contract, appearing in Step D of the Grievance Procedure prescribed by Art. VII, which reads as follows:

"The impartial arbitrator shall at all times be governed by the terms of this agreement. The sole function of the arbitrator shall be to determine whether the Employer or the Union is correct with reference to the proper application and interpretation of this agrement, and no arbitrator shall have any authority to change, amend, modify, supplement or otherwise alter in any respect whatsoever this agreement, or any part hereof. He shall have no power to substitute his discretion for the Company's discretion in cases where under this agreement discretion is reserved to the Company.

2. The language employed appears in the record. Since the Court is not concerned with the merits of the grievance, no oc- casion is seen for setting out the words used.

"The arbitrator must not remake the parties' contract for them, but must interpret and apply it as it stands. He must take the contract as he finds it, regardless of whether he regards its provisions as good or bad, fair or harsh."

The arbitrator went on to find that Rigdon had loitered in the toilet but, as indicated, he determined ultimately that the discharge was not justified and ordered that Rigdon be reinstated with a certain amount of back pay. A full understanding of this ultimate decision requires statement of certain other facts.

While the formal collective bargaining agreement provided that violation of a company rule should be "good cause" for discharge, the formal agreement itself prescribed no rules. The rules themselves were set forth in the pamphlet and the bulletin which have been mentioned.

In the pamphlet the Company drew a distinction between minor violations and those of greater importance. The pamphlet provides that written notices of minor violations are to be given employees, and that discharge may follow should an employee receive a third written notice of such a violation.[3] While the pamphlet did not define "major offenses" or "minor offenses," it would seem quite clear that loitering in the toilet would be a minor offense, and the Company so treated it.

The arbitrator found that in addition to the minor offenses with respect to which written warning notices were is-

sued, there was another class of still more insignificant offenses for which no written notices were given but only oral warnings or admonitions which did not count toward an employee's discharge. And it was further found that up until the Rigdon episode written notices were not issued for the offense of loitering in the toilet.

In reaching his conclusion that the discharge of Rigdon was not justified, the arbitrator considered not only the formal written contract, but also the warning notice provisions of the pamphlet, and the custom of giving merely oral warnings for trivial offenses, which oral warnings were not considered as leading up to discharge. In this connection the arbitrator said: * * * all these practices and writings together entered into the formal current meaning of the contract as it was made to appear to the parties working under it on Aug. 31, 1960. This is the contract which the arbitrator has to interpret and apply." The arbitrator then went on to say:

"In this light it appears that, either by 'waiver' or by a process of semi-official interpretation on the Company's part, the contract did not on Aug. 31, 1960, authorize the discharge of an employee for the offense of loitering in the toilet, at least if the period of loitering was a comparatively brief one, as was the case here.

"This being true, the discharge of Rigdon was not 'just cause' within the meaning of the operative contract. He is entitled to reinstatement, without loss of seniority rights. The arbitra-

3. "Warning notices are given to the employees for violations of Company rules. The purpose of these notices is to warn the employee that failure to correct the condition may result in his discharge. Discharge may result immediately due to a major offense, but for minor offenses, discharge may follow the second warning if the infraction continues." (Pamphlet, p. 11.) Then follows a list of offenses for which warning notices would be issued. That list includes violations of Company rules of conduct, poor attitude, disobedience to orders, and certain others. On the next page of the pamphlet

are listed certain "possible causes" for discharge. Included in those causes are "coercion, intimidation or use of insulting language toward another employee." At the conclusion of the list of possible causes for discharge there follows this statement: "Any employee having received two Warning Notices will be subject to dismissal should it be necessary to issue a third warning for any infraction of company rules." (Pamphlet p. 12.) As pointed out, the notice received by Rigdon on August 31, 1960, was his third notice.

tor does not feel, however, that Rigdon is entitled to full pay for the period since he was discharged. Rigdon was guilty of violating a Company rule which he knew to be in force. The Company acted in good faith in discharging him, even though the discharge was not justified. The contract does not prescribe what relief the arbitrator shall allow to improperly discharged grievants, but only prescribes that the arbitrator's decision, whatever it is, shall take effect as of the date when the controversy originated. * * This leaves the arbitrator free to exercise his discretion as to what his decision shall be on the matter of back pay to be awarded. It is ordered that Rigdon receive back pay commencing as of Jan. 1, 1961, and continuing to the day on which he is recalled to work, at the rate of his average earnings for a forty-hour week during the three months immediately preceding his discharge."

While counsel for Virco contends earnestly in his thorough brief that in reaching his result the arbitrator departed from the contract and entered the field of managerial discretion, the Court finds itself unable to agree. In the Court's estimation the arbitrator did no more than interpret and apply the contract, and his application and interpretation are binding on both the parties and the Court.

■ Before he could interpret the contract, the arbitrator had to determine what the contract was, and he had a right to consider not only the formal agreement but collateral materials as well, including the actual practices prevailing in the Virco plant. This is made quite clear by the holding in United Steelworkers of America v. Warrior & Gulf Navigation Co., supra, 363 U.S. 574, 578–582, 80 S.Ct. 1347, 4 L.Ed.2d 1409. In finding that "the contract" consisted of the formal agreement, the pamphlet, the bulletin, and the actual practices of the Company and in construing the entire contract and applying it to Rigdon's grievance, the arbitrator did nothing that he was not supposed to do. He did not undertake to amend the contract or to make a new contract for the parties or to substitute his own discretion for that of the Company.

■ Further, the arbitrator did not exceed his authority when he determined that as of August 31, 1960, the Company had "waived" its right to discharge an employee for merely loitering in the toilet. In ordinary suits upon contracts the question of waiver frequently arises, and certainly it is not considered that a court in finding the existence of a waiver of a given right has improperly amended the contract or written a new one. While there is no question that under the formal contract, as drawn, the Company had a right to discharge an employee for a single violation of any company rule no matter how trivial, it was within the competency of the Company by waiver or otherwise to circumscribe that right and the arbitrator found that it had done so.

In support of its position Virco cites Local 791, Int. Union of E. R. & M. Workers, AFL–CIO v. Magnovox Co., 6 Cir., 286 F.2d 465, and Textile Workers Union of America v. American Thread Co., 4 Cir., 291 F.2d 894. Neither of those cases is in point. In *Magnovox* the arbitrator had found that the employer was justified in taking a certain course of action, but then went on to order the employer to engage in certain negotiations looking toward a change in its business policy. It was held that the authority of the arbitrator had been exceeded. In *American Thread* the arbitrator found that the employee had violated a company rule but thought that the penalty of discharge was too severe and imposed a lesser penalty. It was held that discipline being justified the extent of the discipline was within the discretion of the employer, and that the arbitrator erred in substituting therefor his own ideas of appropriate discipline. Here, Rigdon was not ordered reinstated because the arbitrator thought that discharge was "too severe" a punishment. The reinstatement was ordered because the arbitrator found that the discharge was not justified by the contract.

It is to be noted that the arbitrator closed his opinion with a *caveat* to the effect that he was not holding that Virco is bound permanently by its waiver or by its "semi-official" interpretation of the contract, but rather is free to adopt stricter measures with respect to the conduct of its employees, provided that it announces clearly that it is doing so. "Once such announcement is made," says the arbitrator, "Employees are not misled, and they know what the rules really mean." He continues: "Probably the Company could give discharge effect even to the rule against unnecessary conversation, if it were deemed wise to do so. This is within the area of matters in respect to which discretionary power is vested in the Company, on the proper assumption that its discretion will be reasonably and wisely exercised."

One problem remains for consideration. While, as indicated, the arbitrator ordered that Rigdon be reinstated with back pay from January 1, 1961, the arbitrator did not calculate the amount of money to which Rigdon was entitled up to the time that the award was made, and obviously the arbitrator could not calculate at that time the amount of money that might accrue to Rigdon in the future as "back pay" should the defendant fail or refuse to carry out the award, and should the award be enforced ultimately. Nor did the arbitrator state specifically that in computing Rigdon's back pay Virco should be given credit for any sums earned by Rigdon after his discharge, or which he might have earned by the exercise of reasonable diligence to find employment. In cases arising under section 10(c), such credit is allowed. N. L. R. B. v. Gullett Gin Co., 340 U.S. 361, 71 S.Ct. 327, 95 L.Ed. 337; Phelps Dodge Corp. v. N. L. R. B., 313 U.S. 177, 61 S.Ct. 845, 85 L.Ed. 1271; N. L. R. B. v. Brashear Freight Lines, 8 Cir, 127 F.2d 198. And such allowance has been made in at least one arbitration case. Enterprise Wheel & Car Corporation v. United Steelworkers of America, 4 Cir., 269 F.2d 327, aff'd in part and rev'd in part, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424. However, in National Labor Relations Act cases credit is not allowed for collateral benefits, such as unemployment compensation, which the employee may receive while laid off. N. L. R. B. v. Gullett Gin Co., supra.

■ Since the arbitrator made no dollars and cents award of back pay to Rigdon, and since considerable time has elapsed since the award was made, it appears that a further dispute may arise as to the amount which Rigdon is entitled to receive. In such circumstances that particular question should be resubmitted to the arbitrator to make an appropriate determination, taking into consideration the extent, if any, to which the award in favor of Rigdon should be reduced on account of sums earned by Rigdon, or which by the exercise of ordinary diligence he could have earned, since January 1, 1961, and particularly since the award was made. The propriety of such a resubmission was recognized both by the Court of Appeals and by the Supreme Court in Enterprise Wheel & Car Corporation v. United Steelworkers, supra.

It is, therefore, by the Court CONSIDERED, ORDERED, and ADJUDGED that the prayer of the plaintiff for specific performance of the award of arbitrator, Robert A. Leflar, directing the reinstatement without loss of seniority of the employee Raymond Rigdon and further directing that the said Rigdon be paid back pay for the period commencing January 1, 1961, and running up to the day on which he is recalled to work, at the rate of his average earnings for a forty-hour week during the three months immediately preceding his discharge, be, and it hereby is, granted, and that the defendant, Virco Manufacturing Corporation be, and it hereby is, directed to abide by, perform, and carry out said award, and within ten days reinstate or offer to reinstate the said Rigdon in his employment without loss of seniority.

As to the amount of back pay to be paid to Rigdon, it is further ordered that the question of such amount be, and the same hereby is, resubmitted to the ar-

bitrator for his determination in a manner not inconsistent with the views expressed in the opinion of the Court. When such determination has been made and declared, the defendant is, without further order of this Court, to pay the sum adjudged to the said Rigdon.

It is further ordered that the costs of this action be borne by the defendant, but that plaintiff's prayer for an attorney's fee and for an award of the expenses of litigation be, and the same hereby is denied.